Case number 241788, Grace Chen et al. v. Hillsdale College. Oral argument not to exceed 15 minutes per side. Mr. Chalas, you may proceed for the appellants. Good morning. Good morning, Your Honor. Good morning. I'd like to reserve three minutes for my rebuttal. My name is Mark Chalas. I'm here on behalf of the plaintiff appellants, Grace Chen and Danielle Villarreal. Both were students at Hillsdale College who were sexually assaulted by two men, also students at Hillsdale College. We are here appealing the district court's grant of a motion to dismiss with respect to three counts. The first is negligence. The second, the infliction of emotional distress. The third, the Elliott-Larsen Civil Rights Act. All of the claims are indisputably governed by Michigan substantive law. With respect to the negligence count, respectfully, the trial court erroneously dismissed plaintiff's complaint without following Michigan law and without engaging with plaintiff's detailed factual allegations. So how do you address the duty issue? Right. And that's the sole issue that the court addressed in the negligence with respect to the negligence count and dismissed it based on a finding that there was no duty. Michigan law is clear, as expressed by the Michigan Supreme Court, that a court considering whether there's legal duty must do more than just look at whether there's a special relationship between the defendant and the plaintiff. In this case, the district court only looked at that, that one single prong. In the E. Inray Certified Question case, which is from the 14th District Court of Appeals of Texas, certified to the Michigan Supreme Court, the Michigan Supreme Court made clear what a court considering the question of legal duty under Michigan law must do. And what the Michigan Supreme Court said there is that the question of whether a defendant owes an actionable legal duty to the plaintiff is one of law, which the court decides after assessing the competing policy considerations for and against recognizing the asserted duty. Duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy, which lead the law to say that the plaintiff's entitled to protection. The inquiry involves considering, among any other relevant considerations, the relationship of the parties, the foreseeability of the harm, the burden on the defendant, the nature of the risk presented. Here, the district court only considered one of those factors, the relationship of the parties, and then stopped. That is expressly what the Michigan Supreme Court said, you cannot do. The court here, the district court said, that's all I'm going to do, and made it express that that was all the court was going to do. So what's your argument about relationship here? You agree that Michigan law doesn't require you to prevent all criminal acts, right? We're all on the same page there if we're going to go to Michigan Supreme Court decisions. So there's an exception for special dependent relationships and so forth. And why would that apply here to dorm rooms, for example? It's not like a cheerleading practice where a coach is working with the team and the school is actually engaged in something. I think happily the school is not in the dorms. So how do we deal with that? Well, the school certainly controls the dorms. I don't think there's an allegation that they don't. I mean, these are dorms on campus. One of the assaults was in a dorm. That's right. One was not. That's true, Your Honor. Well, I think we have to start with the basic rule that everybody has a duty to act with due care. And with respect to the special relationship here, what the Michigan Supreme Court said is that you do look at the special relationship, but you have to look at that in light of all of these other factors as well. You have to go through the exercise of looking at the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented. And that all informs the question as to whether there should be a legal duty under a special relationship. Here, these were children that went to a university. They were told by the university that it is an atypically safe place. They said that in their briefs as well. They've made a big point of that. They were adults when this happened, weren't they, Don? I'm sorry, Your Honor? They were adults when this happened. They were. They were, Your Honor. That's right. They were children exactly. They had been children at one time. They were children when they chose the university, and they were 18 when this happened. So they were legally adults. That's true, Your Honor. The relationship is— I'm struggling with—you seem to have read a lot of this decision to us, and I'm still not sure I understand what you're trying to do with your argument time here. Are you saying the problem is they didn't look at foreseeability, they just stopped at special relationship, and the Michigan Supreme Court says that's forbidden and we have to send it back and we can't do anything else? Is that what you're trying to get us to do here? I'm trying to figure out where you're going. Right. So the idea of a special relationship is not a prong that can be viewed in isolation. In other words, whether there is a special relationship is informed by the analysis of the other factors as well. And that involves weighing policy. That's what the Michigan Supreme Court said. There may be a special relationship here, and the way to— Let's talk about foreseeability then. The Michigan Supreme Court is pretty clear about that, that it's got to be specific, identifiable, and not just the generic problem that sadly there are sexual assaults that happen on college campuses. That's right. Okay, so why don't you lose this amount of law on that point? On foreseeability? Yes. We allege in the complaint that there was enough information for this university that— Go ahead. Tell us. Yes. What was it? Go ahead. Right. As to these two men. Well, we haven't alleged with respect to these two particular men. Okay, so why don't you have to allege it as to these two men? Well, they were aware of a heightened risk of sexual assault on the campus. They had actual information about prior sexual assaults on the campus. And while they don't have—we don't have any discovery yet, so we don't have their files to know what these two men— we know one of the men was in trouble at the time that this happened, and that was the excuse for why he wasn't punished again for the sexual assault. What was his prior infraction? We only know it was alcohol-related. We don't have access to his, as of now, federally protected education file, so we don't know what his disciplinary infraction was. Our client asked— Is it that the university is supposed to police every student who drinks too much at a given time and throw them out of the school or something like that or anticipate he'll be involved in some kind of a sexual relationship? Not necessarily, Your Honor. I don't think that there is so broad an obligation that they must police every underage drinking incident, for example, and then throw the student out because of a fear of sexual assault. But when they have actual knowledge that there is an increased risk for sexual assault and they have actual information that there have been prior sexual assaults, then they have an obligation to act with reasonable care. That's all we're saying. We're not saying they're strictly liable for every sexual assault that happens. We're not saying that they're strictly liable for these sexual assaults. We're saying that they have an obligation to use reasonable care. They have a duty to the students. They persuade to come to their college and they recruit students. At least one of them was an athlete who was recruited. And the point is they have an obligation to use reasonable care. If the university had used reasonable care here, as I think the law requires them to, it is our contention that these sexual assaults would not have happened. That's the foreseeability prong and the causation prong as well. But the district court didn't do any of that analysis. In the in-rate certified question case. You pointed out it's a legal question, so be it. We can do it. Well, it is a legal question. The court's entitled to make that decision. But, again, the Michigan Supreme Court is very clear about what the court must do, and the court didn't do it here. Now, the question is what would have been the result if they did it? I think and we think, we contend that if the court had gone through the analysis and made the policy determination. For what it's worth category, I don't read Michigan law the way you read it. And for what it's worth category, the way I read it is it says there is no general duty to prevent criminal acts between two private parties. That's where you start. You can come back and say, well, that's the general rule, but we have a special relationship. And if you say there's no special relationship, you don't go any further. So that's how I read it. I realize you don't need to read to me again. I don't think it's a holding on this point. But I'm still trying to figure out why you're not trying to tell us cases on college campuses where someone says this is an example of a special relationship, and here's an example of the kind of foreseeability that works and why it maps on to our allegations. That's what would help your case. Well, we can certainly do that. The Barlow v. State case, I think, is particularly instructive. It's a case where the Ninth Circuit certified the question of state law to the state Supreme Court. In this case, it was Washington. There, there was a sexual assault involving students, and the court found that there was an obligation, at least with respect to the on-campus rape, that there was a responsibility in the university, a duty of reasonable care to prevent that sort of conduct. And so that's an appellate decision. It is. And that was a case where there was an existing relationship? Was the school in charge of the event? Was it a dorm room problem? It was a dorm room problem, and there was an off-campus event that was sponsored by the school in that case. And in our case, we had one of the— Was there foreseeability of the assailant? Not the particular assailant. There was, in that case, there was an issue of prior sexual assaults by members of a group. It was a fraternity in that case. Oh, it was a fraternity. Yes, sir. That had had problems before. Right. Some members of the fraternity, not necessarily the same assailants. I got it. So that's one of the cases that I think addresses the issue. But if I may— I'm curious. Does Hillsdale have fraternities or sororities? I just don't know. I don't know the answer to that, actually. It's not an issue in our case. One of the assailants was a member of the baseball team, but we're not alleging that there was a fraternity involved in this case. Was the Ninth Circuit case dealing with California law or— Washington state law. Okay. Yes, sir. And it was certified from the Ninth Circuit. In what it's worth category, it's not hard to imagine a fraternity where there's been sexual assaults and a school now having a responsibility for foreseeability reasons to do something about it. That does seem distinct to me. Right. It didn't happen necessarily in the fraternity. It was members of a fraternity that were involved. But the point that that court made was that there is a special relationship between the school and the students and also consider the foreseeability, which this court here didn't even get to foreseeability. Do you want to address either of the other claims? I do, Your Honor. Let me quickly address the infliction of emotional distress claim. Thank you. This claim focuses primarily on the conduct that occurred after these young women reported the assaults to the school. And here what the district court did is the district court cited five allegations, which are basically the elements of the cause of action, and erroneously categorized those as the, quote, totality of the claim. In fact, the complaint lays out in great detail some very serious conduct that we contend is outrageous. And maybe reasonable minds can differ, but certainly we contend it's outrageous. For example, when she made the report, the lawyer for Hillsdale who was charged with investigating the assault said, well, there's no obvious force used, so you couldn't have been sexually assaulted. And when she reported that she was raped, the same person said, well, you're lucky you weren't raped. I don't know what that means. I don't know if she disbelieved her or if she had a different definition of rape. She was told, Ms. Chen, that she should take some time off to put the sexual assault behind her, and this way she could be friends with her assaulter in the future. And these are all laid out in the complaint. That's just a few examples with Ms. Villarreal. She was told that because her attacker eventually stopped after she pleaded with him, he would not be expelled. She was told that she was to blame for the incident because she had initiated romantic contact with the man earlier in the evening. And there's a laundry list of these facts that we pleaded that the district court didn't even reference, let alone. So you're well past your red light. So if you've got one or two key points you want to make, you can do the rest on rebuttal. Yes, certainly. With respect to the inflicted emotional distress claim, it is our position that the district court did not consider the relevant facts and should have. So a little bit like your first argument, a process point almost. Not exactly. The first argument is that she didn't follow Michigan law that requires her to assess all of these factors together before deciding whether or not. In this case, she didn't consider the facts, and the facts on an outrageous conduct claim are what drive the claim. And we all agree what the cause of action is. It's a question of whether these facts are outrageous, and where reasonable minds disagree, it should be a jury question. Got it. Okay. And I have nothing to add on the Elliott-Larsen Civil Rights Act claim other than what's in our briefs. All right. Thank you very much. That's all rebuttal. Let's hear from the other side. Thank you. Good morning. Good morning, Your Honors. Allison Ho on behalf of Hillsdale College. May it please the Court. Sexual misconduct is an egregious violation of the rights, dignity, and personhood of others. That's why Hillsdale College prohibits, investigates, and punishes that misconduct. Try as it might, though, Hillsdale can't do the impossible and prevent all misconduct. Across all three of their remaining state law claims, plaintiffs push this Court to adopt novel theories that Michigan courts have either expressly rejected or never before recognized. That isn't the proper role of federal courts sitting in diversity, so affirmance is required on each claim. First, on negligence, Michigan courts have refused to recognize a duty owed by schools to students outside school-supervised activities. So, I mean, that seems to be the rub here. Obviously dorm sleeping is not a school-sponsored activity, but a school will just stick with one of the assaults, which was in a dorm, so that seems to be their best case. So how should we think about that? I mean, it's true. It's not the school saying this is a greet-and-meet or this is a sports practice where there's a school employee there. Are there proctors in the dorms? Some dorms have people that live there. I don't know. The record isn't clear on that point, Your Honor, but let me make two points in response to your question. First, under Michigan law, the key is control, and the fact of the matter is the college does not have control over what goes on in the dorm room. There is not someone there. It cannot exercise control there. And secondly, if you look at the Michigan, I think the closest Michigan case, which we think is directly on point, is the Michigan Court of Appeals case in In-Re-Do. That was a case where the plaintiff was a 12-year-old boy who was attacked in a school building. There was a school activity going on, and yet the Michigan Court of Appeals said there is no special duty there. Because you did not have a school-sponsored activity, and the school was still not exercising control over the activity itself. So we think as a matter of Michigan law, which is what controls here, that Michigan courts have made it very clear that certainly if a special relationship does not extend to a 12-year-old in a secondary school where there is a school activity going on, certainly Michigan Supreme Courts would not recognize a special relationship here at the college level. And I'm not aware of any other case, as we talk about in our brief, where a jurisdiction anywhere has recognized a duty under this circumstance. And let me address the Barlow case that my friend on the other side raised. We distinguish that case on page 22 of our brief. It's a Washington State case. And let me directly quote, quote, a university's duty is limited to where a student is on campus for school-related purposes or participating in a school activity. So even in that case, which wouldn't control here because it's not Michigan law, the courts are making clear that essentially it doesn't boil down to control over the circumstances that give rise. Could a school just say, we have no rules in dorms, it's your space, you can do whatever you want, we're not going to be enforcing the law or any school policies. And then it turns out that the dorm is just, you know, a haven for all sorts of illicit activities. Could a school do that? Is there absolutely no responsibility? When the school is the one who provides the dorm and allows people to live there, invites people to live there? Two points to that, Your Honor. I think in terms of this, I think there would still have to be a special relationship. And then there would still be a question of foreseeability. I think there might well be other causes of action that might come into play in a situation like this. My friends on the other side had a negligent undertaking claim below. We think that the district court, we think Judge Beckering correctly dismissed that. But they've abandoned that claim on a bill. But one can imagine breach of contract cases or negligent undertaking claims arising from those circumstances. But the question would still be, and of course, different facts might affect the analysis on different prongs of the negligence test. But in terms of the key question here, which is special relationship. And Chief Judge Hutton, you're right, in Michigan. But can I just push back a little on the special relationship point? I get it that it's important under Michigan law. But I must say my suspicion is that the Michigan Supreme Court, if we just take this situation, their general view is that the school doesn't have a duty to protect its students from sexual assaults. There is no such special relationship. So let's just say that's how they would look at it. I strongly suspect they would reconsider if you had a student that had committed a couple sexual assaults. I think there would now be a duty on the school to either get the student out of there, have them investigated, charged, and put in jail. So even without, quote, a special relationship, I really wonder if the real point in a college campus is foreseeability. Now, it doesn't necessarily hurt you because I think they're struggling to find out why these men were threats to these women or threats to anybody. But I must say I feel like that's probably the thing really driving this, and people would look over the special relationship point pretty quickly if they saw someone that was a threat. I think, Chief Justin, we could agree to disagree on the special relationship point, and I would be in violent agreement with you on the foreseeability point. And I think when you look at some of the—actually, most of them are Title IX cases that my friend on the other side rely on for foreseeability. They involve things like, as you were discussing earlier, fraternities or sports teams or weekends where the college had basically horribly said, you know, show the football recruits a good time, and you throw alcohol into that mix, and it doesn't take a rocket science to predict what could happen. Our facts here could not be farther from those facts. There is not a shred of factual allegation that my friends have alleged in their amended complaint that even comes close to foreseeability. And then on top of that, Your Honor, you would still, even if you had special relationship, even if you had foreseeability, that would only get you duty, and you'd still have to get breach and causation. And as we briefed below and briefed in our response brief, we believe that even though the district court didn't address it, they can't clear those bars either in this case. Was there, did they attempt to find out what the prior problem with one of the students was? The alcohol-related? The record does not disclose that. What the record discloses, the only thing the record discloses is that it was an alcohol, it was a problem with alcohol. The record does not disclose anything else. I'm asking a different question, whether the plaintiff argued, well, you know, alcohol could relate to a lot of different things, including improper conduct with respect to women, so we need to know that before you dismiss the case. No, Your Honor, I don't believe that they argued that. And my friend can respond, but likely because it would be hard to see the limits of that argument in terms of the duty, as Judge Seiler referenced in his question earlier about the expansive nature of the duty that would result in that case. So I think that's probably why they didn't pursue that. And I'll just briefly touch on the other two claims, if I may. On intentional infliction of emotional distress, the conduct here doesn't satisfy Michigan's strict standard for extreme and outrageous conduct, which in Michigan is a threshold question for courts to decide. And my friend rested on his briefing on the Elliott-Larson Civil Rights Act case claim, so I'll do the same unless the court has specific questions about that. As I understand the allegations, and there are some specific allegations, the front-facing people, the lawyers and whoever else they were told to deal with, at some point were saying things like, you better drop it or you may have consequences, which sounds a little outrageous to me to be telling people basically, or it was your fault or things tantamount to those type of comments. Why isn't that outrageous? Two responses, Your Honor. I think, first, it's important to stay attuned to exactly what the plaintiffs alleged here in the amended complaint. I think there is some hyperbole that transpired when it came to their briefing. I think that's particularly true with the examples that Your Honor highlights. But even if I spot you that, even if I were to accept your characterizations and plaintiffs' characterizations, I think if you look at Michigan law, if you look at the cases, that gives you perhaps the best yardstick for what this court and Michigan courts have talked about is a very strict, a particularly strict standard where Michigan cases, Michigan courts have said arguably worse conduct doesn't rise to the level of intentional infliction of emotional distress, as we lay out in our briefing. And when you look at the conduct that Michigan courts have recognized, it is worlds apart from what you have here. One question I hadn't thought about before, Judge White's question, which also your counsel on the other side, it says you consider all the facts in deciding whether there's an intentional infliction of emotional distress claim, and surely he's right, you've got to consider the bad ones, the worst ones. But I take it you have to consider the universe. So, I mean, one fact that does cut the other way on outrage is pretty significant, that the school hires a private attorney in both instances. I mean, that is clearly beyond reproach idea and very good, even if there were disagreements between counsels. So I take it the point is we look at all the facts to decide whether you cross the threshold of the kind of outrage you need. Yes, Your Honor, and I think in a sense, under that metric, Judge Beckering not only shouldn't be faulted because she did, I don't think her analysis actually credited that. So if anything, her analysis is even friendlier to my friends on the other side. But I think I think you're exactly right. And when you look at cases, for example, like Meek, where you have a Michigan court dismissing a claim on the pleadings, where you had, you know, multiple sexist, racist remarks. You had Duran releasing a person, a former judge who had fled from Pablo Escobar and was in hiding and under death threats, and releasing releasing her and her family's name and address. Michigan court said no intentional, no intentional infliction of emotional distress in those cases. If you look at the cases where Michigan courts say you'd have it, I mean, you look at a case like Haberbusch, where you had a nurse basically conduct a reign of terror over a doctor and his family for years, leaving leaving threatening murder and leaving an ax on the doctor's car and threatening his daughter. Or you look at a case like Linebaugh, where you have a very crude drawing of a woman engaging in sex with a co-worker, not her husband, that was circulated widely around the workplace. We have situations where the direct invader of the person's privacy and personhood commits conduct like that. Michigan courts will say, yes, that is outrageous. I think those cases only confirm how far this case is from reaching from reaching the bar set by Michigan courts. And if there are no further questions. No, thank you, counsel. Thank you. Let's hear rebuttal. Thank you, Your Honor. So with respect to this question, outrageous conduct, you're absolutely right. They should consider all of the judge should consider all the conduct. It's pretty clear from the opinion that she didn't do that here. But what she can't do. Remember, we're on a motion to dismiss the initial pleading. She has to take the district court has to take our facts and consider them true and consider them in the light most favorable to us at this point. And if reasonable minds can differ about whether a statement that, well, you caused this by making a romantic reach out earlier, or you weren't raped, for example, if reasonable minds can differ, it becomes a jury question. Would your case be easier or harder if the school had dismissed this male who was outrageous in his conduct as a student? I think that would make our case harder in that. That would at least indicate that they took it seriously and that they there was some punishment to the assailant, not just to the victim, which is what happened here. Did the assailant get any kind of punishment or suspension or anything? With respect to one of them, the school said they put him on social probation and suspended him from the baseball team. And apparently, as we've alleged, neither of those things happened. He was seen at a party. He was seen practicing with the baseball team. And he played baseball that entire season, apparently. I thought the allegations, even with all the benefits your way, was that he was just off the baseball team for a short time. Well, we don't know exactly how long. Again, we don't have access to his records. But apparently, if he had a suspension, it was during the offseason when there was no baseball, evidently. He was in the springtime playing with the team. This occurred in the fall. And if he had a suspension, it was very short during the offseason at best. I wanted to make two quick other points. Your Honor's point about foreseeability may drive the analysis. That's exactly what the Michigan Supreme Court said in Ray's certified question. You must not just say special relationship, yes, no, if no, stop here. You have to look at all the factors. You have to look at the foreseeability factor. You have to look at way the benefits and risks to society for these things. That's what the district court didn't do. Yes, it is a process question, but it's a very important process question, particularly at the threshold where we have no discovery. And to make these decisions and to throw these two women out of court at the threshold without doing what at least the Michigan Supreme Court has said the court must do, we submit this error. And I do agree with my friend that the key is control. And with respect certainly to the campus and the dorm rooms, the university had control. I think it would come as a surprise to everybody if the university said we don't have any control over what happens in the dorms. These are dorms on campus owned and operated, and I don't know if there are RAs on every floor, but I suspect there are. Do they have rules about no men in the women's dormitory? They do have rules. They do, Your Honor. Which way does that cut? Well, they didn't enforce them apparently, so I think that cuts in our favor. Wait, but why wouldn't a policy of saying men can't be in women's dorms be a good policy? It doesn't prove it's always followed, but why wouldn't that show they care about this? Well, I don't think anybody disputes that they care about this. We have alleged in great detail what the problems with the policies of the school were, a policy that just simply says no men in women's dorm room. That may or may not be a good policy. That's a substantive question, but it wasn't enforced obviously. So we think that does help our case. If they had such a policy, it was not enforced here obviously. Okay, so I understand that they have separate dorms, and there is a policy no women in the men's dorm, no men in the women's dorm? I don't know that that is at all times for all purposes, Your Honor, so I don't want to overstate it. I don't know with sufficient specificity. All we know is single-sex dorms. They're single-sex dorms, right? Men don't live with women. Oh, that's very different. Maybe I'm confused, but that's very different from your answer to Judge Seidman. I may have misunderstood you. Well, I was responding to something he said. So it sounds like he's backing off on his view of whether men can be in women's dorms and vice versa. I may have misunderstood you. I'm just saying the only thing we know is they're single-sex dorms on this record. Did this happen in her room or his room? Her room. Her room, okay. Thank you. I'm sorry, did I get that wrong? I thought I heard that. All right. Thank you very much. We appreciate your excellent briefs on both sides, and thank you, as always, for answering our questions, for which we're always grateful. So thank you very much. Thank you. The case will be submitted, and the clerk may call the second case.